Now turn to 25-2052, Charley v. United States. Hold on until they click, can someone close the back door please? Okay, thank you. Good morning, your honors. My name is Lisa Curtis. I represent the appellant, the estate of Nina Charley, her husband, Tim Charley, and her son Niall Charley. In a meritorious case, it has to do with the misdiagnosis of Hantavirus at Gallup Indian Medical Center. That fact that I just said right there is not disputed. She died from an untreated Hantavirus in the area where Hantavirus was actually discovered. So Nina Charley was a 42-year-old Navajo woman. We ask at the end of this discussion and at the court's review of all the records and the filings. Oh, God. Look what you did. I apologize, Judge Hart. I was at 14-04 when that happened. We'll note that. Is everything okay? Oh, really? You're sure? Okay. In my building, we have to walk down 18 flights, and then they tell us it was just a test. All right, Judge, until you tell me to stop. No, no. Start at 14 minutes and 15 seconds. Can you reset it to 14 minutes and 15 seconds? If you can't, we'll just go over a little bit.  Thank you, sir. I'm sorry. Where I was was the point of today's hearing and the briefing that we've done is that we're asking that you return the case to be determined on its merits. Nathaniel, would you go check and see what's going on, or is somebody else? I don't want us all to die in a fire. I don't either. My regular job means I would say we should leave. But this is government. Truthfully, two of my children are in this courtroom, and if there's a fire, they should get up and leave. I'm going to wait until he comes back. Yes, sir. Would you like me to have a seat? No, no, no. I'm saying go ahead. We'll continue unless he says it's time to leave. Thank you, sir. I just want to be clear. The case itself is meritorious. There is not a dispute about that reality. The reason that we're here today is for an error, a mistake that was made, and by everyone involved. The case itself has had a difficult and tortured history. It has over 280 pleadings in it. It was very hotly contested by the government, who represents Gallup Indian Medical Center. There were four different times that the magistrate got involved just to move the mediation because basic discovery had not been done. So there was an agreement in September. Then on October 19th, the deposition of Dr. Plotsky, the causation witness on this very rare virus, which we're all hearing about right now, Hantavirus, was going to testify. That was a date that was given that was agreed to. It was not set. There was an issue with that date because he's on the East Coast, and the U.S. attorney did not want to take his deposition at what would be 6 a.m. in Mountain Time. This is a regular thing, but did not want to do that. So the court held a status conference, did a bunch of motions compel, and said that deposition should take place on the 19th and gave dates. We missed an email. We missed an email that said that Dr. Plotsky could not. He had held that date for over five weeks. He could not continue to do so. He worked and tried to work with us. Even though the hearing was on the 13th, the government did not set that deposition. We don't know if they're going to set it or not set it. Set that deposition on the 16th as a virtual deposition, and then sent an email with a virtual link for that deposition. In reviewing that, sending it to Dr. Plotsky, he said, you missed my email. I can't be available that day. Immediately took steps to try to take care of the problem. This is an important point right here. By the time I was able to connect with the Assistant U.S. Attorney, Mr. Eaton, he had gone to New York in a deposition I believed was virtual. And I said, I don't want there to be a problem. We'll pay your expenses, travel and everything. We tried to cure the inconvenience. Because the thing that when we're talking about Aaron House, which is relevant here, and then Woodworker Supply Company, which is also relevant here, the prejudice, there is no prejudice to the government in this case, period. Is Aaron House relevant because when the judge would not allow you to have Dr. Polsky, that was essentially case ending for you? Aaron House is relevant and also Woodworker Supply because that is a true statement. Because Aaron House applies to dismissal as a sanction. And so that framework is, explain why that framework is relevant here. It seems everyone agrees that it is, but explain why it is. Certainly. And I think the best explanation of that is something that the judge, district court judge, said himself in the two hearings on this point. When the court said, is there anything else than exclusion that you can live with on the November 14th hearing? And then in the March hearing said, here's the thing, and I'm sure you've thought about this, that we can make you whole. We can make everybody whole here and say no claims. You're not going to shift any of this cost. This is your fault. This is your expert that caused all of this. If we can make everybody whole, that price may be too high for them to pay. And you're going to have to go to the 10th and defend the exclusion of this expert. Do you like that or do you want to be made whole? If he could be made whole, would you rather be made whole, take the deposition, refile the motion? Or do you want to defend this at the 10th as a procedural default that has fatal consequences? The district court recognized that throwing out a causation witness in a medical negligence case against the government is case ending. It is a fatal outcome to the case. Could I just jump in on that point? Yes, sir. You seem to be arguing that excluding Dr. Polsky was fatal to your case, but wasn't it the court's refusal to accept a substitute causation expert that was fatal to your case? If the court had allowed you to substitute, you would have had a causation expert, but the court decided that you couldn't. Isn't that really at the crux of this at this point? You lose Dr. Polsky, all right, but if you could have brought in Dr. Harkins, you're back in business, right, on causation. Then you get the summary judgment, and you don't have a causation expert, and that's why summary judgment is granted. So it really isn't the exclusion of Dr. Polsky so much as it is the exclusion of any expert. Isn't that really the issue here? That is a true statement. That's the reason why, whether you're looking at 37B or 37C, and whether you're looking at Ehrenhaus or you're looking at woodworker supply, both of which sort of deal with those issues. Let's look at Ehrenhaus. Did that trigger an obligation, when I say that, the exclusion of any expert, a substitute expert? Did that trigger an obligation for the court to apply the Ehrenhaus factors? Yes, it did. And taking—there was a point in the November 14 hearing where the court said, well, maybe there'll be other evidence that you'll show to us that means that the case can survive. So we took that, and we did that, and we found that expert, and we proposed that expert, but Judge Matheson— Well, when did you propose that expert? After the remainder of the court allowed us to continue discovery. No, I understand, but when exactly did you propose a substitute expert? The expert's affidavit is, I believe, in our—we made mention of it on the 14th, and then our motion for reconsideration. Well, did you propose a particular person to substitute for Dr. Polsky on November 14? I told—I did not give a particular person. I said there was a named party that had treated—a named witness that had, in fact, treated Ms. Charley at UNM. Okay, I'm just— That could be named. Counsel, I'm just asking you, when did you put Dr. Harkins forward as your proposed substitute expert? What day did you do that, by name? The date that that was done, I believe, because our hearing was in March, I'd have to look to give you an exact date. Wasn't it July of 2024? I believe it was about seven months after the November hearing that Dr. Harkins was put forward with an affidavit. All right, and the deadline for identifying experts was July of 2023. Which is what the district court found. So, the district court found that if I had not named this expert previous to Dr. Polsky— And, oh, by the way, there was an order in January 2024 that says no substitute expert. So, why wasn't the district court acting within its discretion to say at this point it's just too late? Your Honor, this is the death by a million cuts analogy, rather than recognition that the fatal blow occurred in November. The court could have cured the prejudice by allowing another expert in place. The court—we have no trial setting— But you didn't give the court the opportunity to do that by bringing forward your substitute in a timely fashion. Your Honor, we brought not only the substitute of Dr. Harkins, but we also said we could— because the court allowed us to continue discovery, to create evidence for this purpose, that the defendant's expert actually supported our causation theory. And that alone would have meant summary judgment could not be granted. Well, but that isn't your argument on appeal. Your argument on appeal is that these rulings about the expert, your expert, was the error here. Your Honor, when— You're not arguing that summary judgment was improperly granted. Maybe you think it was, but that isn't your argument right now. Right. So, Your Honor, when the decision by the district court is that I can't have a substitute expert because they were not named a year earlier under the deadline that Dr. Polsky met, when that's the argument, it is impossible for us to meet that deadline. Sure, but it wasn't impossible to name an expert shortly after Dr. Polsky was excluded. This is to the point where we talked earlier about the rarity of Hantavirus and being able to get a peer to testify against another peer expert, both the experts, the one that we actually proposed, and not even just as a substitute expert, but even as a rebuttal expert to Dr. Mertz. They are colleagues. One is the boss of the other. To show that the limited survival that Dr. Mertz gave, meaning that Charlie was incorrect, she had a reasonable probability of survival. So, we gave multiple different ways of fixing our expert problem, but at the end of the day, the district court did not do what the court is asking me now, which is you waited too long. The court knew we were developing evidence and gave us the opportunity to do that. We had no trial date, and then instead said, there was no other expert because you had to have named them a year ago. So, that makes it impossible for us to meet what the court wants and, in fact, shows. I thought you said that you alluded to Dr. Harkins back in November. We did, but there was a treating. So, why was it impossible? There was a treating physician that we knew that we could put in place, but do you remember, Judge, why we tried not to do that, not to ruin the referral relationship of the hospital to UNM for Hantavirus cases? That was the point. We asked not to do that. Is that what you told the judge? Pardon me? I did tell the judge that, exactly. And, Your Honor, under HCG Platinum, which goes to both standards, the fatality of that decision shows that all the factors were not only not thought of, but not addressed, that we don't have prejudice. We can cure. There's no bad faith on our part. Dr. Polsky is not a party. He is not a litigant. He is not under the control of the litigants. There is no bad faith here, and there was no trial setting. Aaron House has literally not met any one of the elements to allow the fatal end to the case. And I'm going to reserve the rest of my time. Thank you very much. Thank you, sir. Good morning, and may it please the Court. Paige Messick on behalf of the United States, and I'll be presenting argument for the appellees today. This case is about the absolute necessity of allowing a district court to enforce its own orders. Faced with a violation of its orders, a district court has broad discretion to impose sanctions, both to achieve justice in the individual case and to deter future conduct. Here, after two violations of court orders, brought this entire case to a standstill. Judge Browning, who is the very image of judicial temperament, concluded that this willful conduct left him no choice but to exclude plaintiff's expert. Neither that decision, nor his later refusal to backtrack from it, was an abuse of discretion. Though plaintiff's briefing doesn't acknowledge it, there are two separate orders at issue here. First, we have the exclusion order entered at the November 14th hearing. Opening brief doesn't address whether that order itself was an abuse of discretion. And then we have, second, the motion to reconsider denial, which the opening brief essentially treats as if it is the same as the initial exclusion, which isn't how it works. To turn to the first of those, first, there was no abuse of discretion in excluding Dr. Polsky on November 14th. At that point, Dr. Polsky has skipped a court-ordered deposition in favor of a faculty meeting, and counsel have ignored the court's bring dates order. When Judge Browning, at the opening of the hearing, says, where are my dates, they don't say, Your Honor, I'm so sorry. We've been working with him. We just haven't been able to move things around in his schedule yet. Could you please give us some more time to get this done? That's not what they say. They say, certainly, Dr. Polsky cannot. It would take him three days to travel to Albuquerque. They later tell the court that it is impossible for him to clear three days from his schedule for this deposition. And when Judge Browning says, so, he's willing to come out for trial, but he won't come out for a deposition, they don't say, Oh my goodness, no, you've misunderstood us. That's not what we're saying at all. They say, well, trial is a totally different thing. We can deal with that later. So they've never said at this hearing that they simply haven't had enough time to get Dr. Polsky's availability. Plaintiffs have created a problem, and plaintiffs are refusing to fix the problem. This whole case has come to a screeching halt because of the inability. At the November hearing, they actually said, well, maybe we could get a substitute. So why wouldn't that cure the problem? If you're going to exclude Dr. Polsky, why don't you let us find somebody else? It doesn't cure, it doesn't really cure any of the problems that Judge Browning is concerned with at that time. First, we have the inability to move forward. It seemed to me he was pretty concerned about the conduct of Dr. Polsky and the way everything had been handled. Certainly. But where does it indicate he, I mean, he pretty much just said, and I think the quote about providing a substitute, is he says the train has come and gone. And I don't know if that was an official ruling on excluding all experts, but I think it's, would you agree that by the time of, there's the motion for reconsideration on November 30, then there's a January, I think I've got this right, there's a lot of dates here, January 4th. By then, the court's saying, you're done. I'm not going to take a substitute. I agree. And so I think I'm more interested in having you address whether that was the abuse of discretion as opposed to saying Dr. Polsky's out. It was no abuse of discretion for him to let another expert in here, because that would completely undercut the sanction that he, of exclusion of Dr. Polsky. So first, excluding Dr. Polsky was necessary because Dr. Polsky is the one that we can't get deposed. And if you put another expert in there, somebody that defendants have never heard of, never received an expert report from, are going to have to depose some number of months in the future, that doesn't solve the problem of the logjam and litigation. It just pushes it forward to some other time. It doesn't address the violation, the serial violation of the court's orders. It's not an abuse of discretion for Judge Browning to say, you have violated not one but two orders. Wasn't the exclusion of any causation expert tantamount to deciding the case? Yes, I agree that it was. And that's why we have addressed the Erin House factors here. But if Judge Browning says, okay, I exclude this one expert, but it's okay, you can have somebody else back in, that does not send the same kind of message in terms of saying this is not acceptable conduct. You can't behave this way in federal court. If he lets one out but lets the other back in, it undermines that. And it doesn't cure the prejudice to defendants who have had to fly out to New York City. You can't get that time back. If there's anything about Dr. Polsky's protestations that this case makes very clear, it's that it's hard for a busy professional to lose three days of effort. But aren't the plaintiffs being punished for Dr. Polsky's conduct? Aren't they being punished for Dr. Polsky's conduct? I believe that there is a lot of conduct to go around. There's a lot of blame to go around here. All of it is on plaintiff's side. And drawing distinctions between plaintiffs and Dr. Polsky first is, I'm not sure something that they have ever done until oral argument here. But also, he's their expert. They're paying him. I think it might be one thing if he willfully failed to show up for this deposition and they said to Judge Browning the next day, Oh, my goodness. We can't believe this happened. Our expert violated this order. We're very sorry. May we please have another? This isn't somebody that we can work with. But they don't say that. They double down. And when ordered to bring dates to fix this situation to the hearing, they throw that lifeline right back in the court's face. What do we do with the fundamental unfairness aspect of particularly this case? And plaintiffs rely on that, that the exclusion here was fundamentally unfair because it had this case dispositive quality to it. It doesn't seem that our court has passed very much on what we mean by fundamental unfairness in this context. What is the government's position on why we shouldn't conclude that there is fundamental unfairness on the facts of this case? I think it would be very hard to find fundamental unfairness when there has been willful misconduct by the party against whom the sanction has been assessed. I have to say, we- Has there been a finding of willfulness in this case? Yes, there was. Judge Browning made a factual finding of willfulness. And that was not clear error. Plaintiffs have never suggested that Dr. Polsky did not know on October 19th when he chose to go to a faculty meeting that he had been ordered to go to a deposition by the court. They've never said that he didn't know and he didn't make this conscious choice. That is a willful choice to violate the court order. I don't know why they think that it's not, but it could be hardly clear when you've made a choice to not do what the court has said and do what you want to do instead, that that is willful conduct. And he made that finding. He actually made a finding that there was willful violation of orders, plural. And I think the second violation is probably attributable mostly to plaintiffs' counsel. And there, of course, is some unfairness to a litigant in holding them to the conduct of their counsel, but that is the way the system works. And that consequence is something that is between plaintiffs and their counsel now. It's not something the court can countenance when there has been multiple violations of a court order. The Supreme Court is very clear that we can't let sympathy for a litigant and their troubles override every other justification in the Rule 37 sanction context. I want to touch on denying the motion to reconsider. The motion to reconsider is itself a discreet act. It's not reviewed just as if it were the initial order. Below, the plaintiffs made a very limited attack on the initial exclusion order. And then in the motion to reconsider, they put all their eggs in the basket of Dr. Polsky's belated offer of a trial date in late January. They said that this would show the arbitrariness of the district court's demand that they bring these dates within 24 hours of receiving that order. I think that overlooks that plaintiffs knew two weeks ago that they had stood up the Council for the United States in New York City. At that point, that's probably when they should have been scrambling to find a date in Albuquerque, not offering a Zoom or another New York deposition. But even if they are really first on notice of the need to do this at the first time when Judge Browning issues that bring dates order, they never told him, we don't have enough time to do this. They flat out said, he's not coming. He can't find three days to come out to Albuquerque. They also styled it as newly available evidence, that he had this newfound availability at the end of January. But as Judge Browning said, that's revisionist history. That's not what, or no, the first part was revisionist history. This is simply not new evidence. It's a reaction to the court's exclusion order, but it's not the kind of thing that counts as new evidence. But even if it were, Judge Browning took the next step, and he considered these arguments. Even if he would have had the discretion not to engage with them at all, he did consider them, and he said, your January 23rd date is too late. It's unacceptable. It was more than three months after the date that Dr. Polsky had violated the court order to show up at his October 19th deposition, and it was less than two weeks before the start of the scheduled trial. And then, of course, Dr. Polsky, the day before the omnibus hearing, withdraws this January 23rd date, which had been presented as the solution to everything, and substitutes it with an even later date. And at that point, the court has completely lost confidence in him and the plaintiff's ability to wrangle him, that anything he orders short of exclusion is actually going to fix the problems here. What is the government's view of, this is following on Judge Matheson's question, about what really is the issue and the framework for analyzing it? Is it Polsky and Ehrenhaus? Is it Harkins and Woodworker? If you're writing the opinion in your favor, what's the framework that you're using and which issue are you analyzing? I would take it in order, essentially. First, there's a Polsky exclusion, then there's the motion to reconsider denial, and about at the same time as that, there's the firm answer of no on a second expert. I think the fact that he is saying that this is all wrapped together means it is wrapped together. The denial of a new substitution or a substitution of a new expert and the exclusion of Dr. Polsky are part and parcel of the court sanction. And so I do think it is appropriate at that point to treat it as a case dispositive sanction and to evaluate it under Ehrenhaus. If you're looking at the Ehrenhaus factors here, we've all of them. There has been delay and a waste of time mounting fees that have prejudiced the government. All of these are cognizable forms of prejudice. We can't prepare for the upcoming trial. We can't even engage in timely settlement negotiations without having deposed the plaintiff's experts. There's interference with the judicial process. This was a huge waste of time and resources. The court joked perhaps that he had spent more time on getting this deposition done than Dr. Polsky had. It had harmed the court's docket management. There was a whole exchange, I think back at the October 6th hearing, about the difficulty of getting this trial scheduled, but Judge Browning is going to make it happen in February if they want it to happen in February, even if that means he's got to squeeze it in between criminal trials, even if it means he's going to have the pretrial conference over his lunch hour during the break in another criminal trial. But he never warned plaintiffs, right? No, he did not explicitly warn the plaintiffs, but I don't think under the circumstances that any explicit warning was necessary. His bring dates order comes 24 hours before or 27 hours before the hearing on the motion to exclude Dr. Polsky. It is clear that exclusion of Dr. Polsky is a possible sanction here. The United States has already asked for it. If you don't understand that when the court gives you a second order to try to fix the violation of the first order, that that could have an exclusion consequence, I don't know what to say. I think it was extremely clear in context what the stakes were. We have culpable conduct. Also, as Judge Browning explained, we have culpable conduct, both on the part of Dr. Polsky, who willfully missed the deposition, and multiple, multiple contributions to the situation by Plaintiffs' Counsel, including repeatedly denying any meaningful degree of fault for the missing of the deposition, which they had attempted first to blame the United States for. They've also said it was, for instance, you know, unreasonable for the United States not to set that deposition earlier, but they had never ordered, they had never offered seven hours. The best we had was something like four or five hours starting at 4 a.m. Pacific, where one of the defense counsel was going to be attending from. So all of this shifting of blame, I think, only underscores the culpability of Plaintiffs' Counsel here. And then we have explicit trying of some other less severe alternatives. Judge Browning offers one of them. This is his lifeline. This is his bring dates order, and we know how that went. Monetary sanctions don't address the logjam in the case, and they don't restore the court's confidence that other parties will comply or these parties will comply, and they don't deter misconduct to the same extent. I see that I'm out of time. Thank you, Counsel. I think you have a little under two minutes. Your Honor, I'm not sure I have any idea how much time I have to talk, but I'm going to— It's one minute, 46 seconds. Thank you, sir. I'm going to try to deal with this as quickly as I can. A number of the things that Ms. Messick said are dealt with very specifically in the reply. There was no impossibility for Dr. Polsky to get free. You might remember from reading the November 14 hearing, Judge Browning would not allow me to finish a sentence. It was impossible for him to give me three days in a row that quickly. We gave a date within 48 hours of the request for a date for Dr. Polsky. But it's more important that at the time when Dr. Polsky couldn't be there on the 19th and the United States insisted on still holding the deposition, we gave a date, November 8th, very close in time, in New York, that we would pay for all the expenses to cure the inconvenience of what had been caused because there was no prejudice. Prejudice in this setting under Ehrenhaus is the inability to mount a defense. That does not occur here. There is no actual prejudice. There is no interference with the judicial process when you give a date that is a few days later for the same deposition at the expense of the plaintiff. There is no culpability of Mr. Charlie, the litigant. He did nothing to cause this. There was no warning in advance of that November 14 hearing that if we were unable to secure a date within 24 hours for Dr. Polsky to arrive, that the case, he would be excluded and the case would be dismissed. Oh, and then the last, the efficacy of lesser sanctions is borne out by what Judge Browning actually said. He asks twice, the U.S. Attorney, will they accept just being made whole? It is not the U.S. Attorney's job. There are lesser sanctions that allow the case to be heard on its merits. Your time is expiring, so wrap up very quickly. Thank you, sir. I only want to say that this came about because of an error that happened on the 14th. The government represented there were three violated orders and they gave dates to Judge Browning. October 6th, October 13th, and then the court's most recent order. That was not a true statement, and Judge Browning acted on that statement. There was no order on October 6th. There was nothing on October 6th. Thank you. Thank you, counsel. Case is submitted. Counselor excused. We apparently survived the fire. So as a mother, you don't have to worry about your kids anymore. Thank you.